Michael J. PAPRSKAR,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 79–2170.

United States Court of Appeals,
Fifth Circuit.

March 3, 1980.

Michael Anthony Maness, Houston, Tex., for petitioner-appellant.

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before COLEMAN, Chief Judge, FRANK M. JOHNSON, Jr., and POLITZ, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

On November 16, 1978, the United States District Court for the Southern District of Texas dismissed petitioner Michael J. Paprskar's second federal habeas corpus petition as a successive petition "abuse of the writ". The district court erred in making that determination. Accordingly, we vacate the judgment below and remand to the district court for further consideration of Paprskar's petition.

I.

This appeal marks Michael Paprskar's second appearance in this Court challenging his Texas conviction for murder or aspects of his confinement in the Texas penal sys-

tem.[1] In his initial Section 2254 petition, filed in December, 1975, petitioner alleged that state incarcerating authorities had unconstitutionally withheld credit for "good time" on thirty-nine months of pre-conviction detention.[2] Although the district court granted Paprskar's petition, this Court ultimately reversed. *Paprskar v. Estelle*, 566 F.2d 1277, 1281 (5th Cir.), *cert. denied*, 439 U.S. 843, 99 S.Ct. 136, 58 L.Ed.2d 142 (1978).

Paprskar and his family retained an attorney to replace the lawyer who had represented petitioner since his arrest in 1970. Over a period of time, however, the retained counsel failed to seek post-conviction relief in the state courts. In the meantime, Paprskar proceeded pro se on his first Section 2254 petition[3] and the federal district court appointed Attorney Maness, who represents Paprskar here, as counsel for petitioner in that action. Finally, in March, 1976, Paprskar's retained lawyer filed a state post-conviction action challenging petitioner's conviction. The state courts did not dispose of the matter until November, 1976. Even this belated action by the retained counsel, however, was insufficient in that, directly contrary to Paprskar's wishes,

that lawyer raised no claims of the ineffective assistance of petitioner's original attorney. Thereafter, Attorney Maness filed a state post-conviction action raising the ineffective assistance allegations.[4]

As these attempts at relief proceeded toward exhaustion in the Texas state court system, the federal district court granted Paprskar's "good time" petition. As noted above, however, this Court reversed and the Supreme Court ultimately denied certiorari.

After frustration of his attempt for good time relief, Paprskar on April 19, 1978, filed pro se[5] his second habeas corpus petition in the federal courts, the petition under consideration here. Unlike the earlier habeas corpus application, the second petition omitted any reference to conditions of Paprskar's confinement and instead challenged petitioner's conviction.[6]

Respondent filed a motion to dismiss the second application, asserting that it was a "successive petition" within the purview of Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts (28 U.S.C. following § 2254) and constituted an "abuse of the writ" because

1. Paprskar was arrested in January, 1970, and charged with three murders. In June of that year he was tried and convicted in the state courts for one of the murders and was sentenced to die in the electric chair. His appeal to the Texas Court of Criminal Appeals was successful and the conviction was reversed on the ground that evidence used to convict Paprskar was the fruit of an unreasonable search and seizure. *Paprskar v. State*, 484 S.W.2d 731 (Tex.Cr.App.1972).

Following the state court's reversal of Paprskar's conviction, the Texas authorities charged him with the remaining two murders and dropped charges concerning the murder for which he was initially convicted. On April 6, 1973, Paprskar pleaded guilty to the murders and was sentenced to two concurrent twenty-year sentences running from January 20, 1970, the date of the murders. Paprskar did not directly attack the convictions in the Texas courts. *See Paprskar v. Estelle*, 566 F.2d 1277, 1278–79 (5th Cir.), *cert. denied*, 439 U.S. 843, 99 S.Ct. 136, 58 L.Ed.2d 142 (1978).

2. *See* note 1, *supra*.

3. Paprskar's pro se application to the state courts was denied without hearing in 1974,

thereby exhausting state remedies on his "good time" claim.

4. The claim was exhausted in the Texas courts in October, 1977.

5. Attorney Maness had earlier agreed to file the second federal petition. Because of delays no doubt at least partially the result of the time spent in preparation of a petition for certiorari to the United States Supreme Court in the "good time" case, Paprskar filed the second Section 2254 petition pro se.

6. The second habeas corpus petition raised claims that:

(1) petitioner received ineffective assistance of counsel in derogation of his Sixth Amendment rights;

(2) Paprskar involuntarily entered a plea of guilty because his mental capacity was impaired due to drugs administered to him by his jailers;

(3) he was denied his Sixth Amendment right to speedy trial; and

(4) he was denied due process under the Fourteenth Amendment by the trial court's denial of his motion for discovery of a tape recording containing exculpatory material.

Paprskar "should have submitted in his initial federal habeas corpus application [the "good time" case] all of the issues" raised in the second petition.[7] The district court directed Paprskar to explain the reason the contentions raised in the second petition had not been asserted in the first application.[8] The case was then referred to the United States Magistrate who recommended that the district court dismiss the petition as "a classic case of abuse of the writ."[9] The district court followed that recommendation.[10]

## II.

The district court dismissed Paprskar's second petition under the authority of the prohibition of Rule 9(b) against abuse of the writ. For that decision, respondent invites the imprimatur of this Court. We decline the invitation.

Rule 9(b) provides that:

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

To determine whether given conduct constitutes abuse of the writ, however, reference to pre-Rule 9 case law is necessary. Rule 9(b) did not in any way change the standards that govern habeas corpus petitioners in the federal courts. Rather, the Rule restates principles that had previously been judicially developed.

The Supreme Court in *Sanders v. United States*, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963) announced that "full consideration of the merits [of a habeas corpus petitioner's allegations] can be avoided only if there has been an abuse of the writ . . . ." As enacted by Congress, Rule 9(b) codifies the standard of *Sanders*. Advisory Committee Note, Rule 9, Rules Governing Section 2254 Cases in the United States District Courts (28 U.S.C. following § 2254); H.R.Rep.No.1471, 94th Cong., 2d Sess. 5–6, *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 2478, 2482; *Galtieri v. Wainwright*, 582 F.2d 348, 356 & n.18 (5th Cir. 1978) (en banc); 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4267 at 690–91 (1978).[11] When

7. The motion to dismiss the petition failed to mention that the courts of Texas did not complete action on the contentions raised in the second federal habeas petition until *after* the district court's final judgment in the "good time" case. Nor did the motion to dismiss refer to the fact that a large portion of the delay from which respondent alleged prejudice arose resulted from Paprskar's efforts to exhaust state remedies.

8. Paprskar's explanation (prepared without benefit of counsel) in essence asserted ineffective assistance by all three of his attorneys. He failed to state that the claims could not have been raised earlier because his state remedies remained unexhausted.

9. The Magistrate's "memorandum and recommendation" similarly omitted any reference to the problem of exhaustion of state remedies.

10. Following the district court's dismissal of the petition, Mr. Maness, by now aware of the proceeding described above, timely filed notice of appeal. Later, Attorney Maness filed an application for certificate of probable cause and for leave to appeal in forma pauperis in which he attempted to explain that the exhaus-

tion requirement had precluded Paprskar from raising the constitutional challenges to his conviction in the "good time" habeas corpus proceeding. Nevertheless, again on the recommendation of the Magistrate, the district court denied a certificate of probable cause and leave to proceed in forma pauperis. This Court, however, subsequently granted Paprskar's application for a certificate of probable cause and leave to appeal in forma pauperis.

11. Although the decision below was based on Rule 9(b) and the parties here have argued only whether that statute required dismissal of Paprskar's second Section 2254 petition, it is interesting to note 28 U.S.C. § 2244(b). Section 2244(b) provides in relevant part that:

a subsequent application for a writ of habeas corpus . . . need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise *abused the writ.*

we examine the conduct of petitioner [12] in light of the equities, *see Sanders, supra,* 373 U.S. at 17, 83 S.Ct. at 1078, we clearly cannot conclude that this petition constitutes "needless piecemeal litigation" or that its "purpose is to vex, harass, or delay." *Id.* at 18, 83 S.Ct. at 1078. There was here no abuse of the writ ӧf habeas corpus.

The *Sanders* Court spoke of a circumstance in which abuse of the writ is present. "[I]f a prisoner *deliberately* withholds one of two grounds for federal collateral relief at the time of filing his first application . . . he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground." 373 U.S. at 18, 83 S.Ct. at 1078 (emphasis added). However, from *Sanders'* incorporation of the standards of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, *see* 373 U.S. at 18, 83 S.Ct. at 1078 (1963), it is clear that such conduct will be an abuse of the writ only if due to "inexcusable neglect," *Townsend, supra,* 372 U.S. at 317, 83 S.Ct. at 759, or because of " 'an intentional relinquishment or abandonment of a known right or privilege,' " *Fay, supra,* 372 U.S. at 439, 83 S.Ct. at 849, *quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *See* 28 U.S.C. § 2244(b); *Turnbow v. Beto,* 464 F.2d 527, 528 (5th Cir. 1972); *Galtieri, supra,* 582 F.2d at 368 (Goldberg, J., dissenting).

The *Sanders* Court recognized that "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, [or] to enter-tain collateral proceedings whose *only* purpose is to vex, harass, or delay." 373 U.S. at 18, 83 S.Ct. at 1078 (emphasis added). The *Sanders* ruling was based on the principle "that 'habeas corpus has traditionally been regarded as governed by equitable principles.' *United States ex rel. Smith v. Baldi,* 344 U.S. 561, 573, 73 S.Ct. 391, 397, 97 L.Ed. 549 (dissenting opinion). Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." *Sanders, supra,* 373 U.S. at 17, 83 S.Ct. at 1078.

■ In the present case there was neither inexcusable neglect nor deliberate withholding of a ground for relief. *See Turnbow v. Beto, supra.* At the time the district court considered Paprskar's "good time" case, the allegations raised in his second federal petition, *see* note 6, *supra,* had not yet been finally acted on by the courts of Texas and therefore remained unexhausted. The "good time" case, however, was ready to proceed toward resolution. As stated in our en banc decision in *Galtieri, supra,* 582 F.2d at 351, "[t]he rule in this circuit is that a federal district court generally must dismiss, without prejudice, a state prisoner's petition for a writ of habeas corpus that contains a mixture of exhausted and unexhausted claims." Given that rule, we certainly can fault neither the district court for proceeding with the "good time" litigation nor Mr. Maness for not derailing resolution of claims concerning the conditions of petitioner's confinement until exhaustion in the state courts of challenges wholly unrelated to the facts and law involved in the "good time" case. The simple

28 U.S.C. § 2244(b) (emphasis added). Like Rule 9(b) the provision has also been interpreted as a codification of the *Sanders* rule. 17 Wright, Miller & Cooper, *supra,* § 4267 at 689–90; Statute Note, 45 Tex.L.Rev. 592, 593 (1967); *see* Historical and Revision Notes, 28 U.S.C. § 2244. Nevertheless, it preceded by ten years the enactment of Rule 9(b).

**12.** In the present case, respondent met the burden placed upon it by *Sanders* that it plead abuse of the writ. *See* 373 U.S. at 10–11, 83 S.Ct. at 1074–1075. Thereafter, under *Price v. Johnston,* 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948), Paprskar was given the opportunity (and the burden) of "answering that allegation and of proving that he has not abused the writ." See Advisory Committee Note, Rule 9(b). Paprskar responded inadequately to the opportunity. *See* note 8, *supra.* However, when Mr. Maness learned of the difficulties Paprskar faced, he apprised the Court of the actual circumstances involved. *See* note 10, *supra.* Because the proper response to respondent's motion to dismiss was ultimately raised and because equities govern our consideration of the case, we examine the circumstances in the context of the response of Mr. Maness.

fact is that the "good time" case was ripe for adjudication and the claims challenging the underlying conviction were not. "The 'abuse of the Writ' doctrine is of rare and extraordinary application." *Simpson v. Wainwright*, 488 F.2d 494, 495 (5th Cir. 1973). Clearly, it is inapplicable where, as here, there was "some justifiable reason" for failure to raise the contentions in the first petition. *Price v. Johnston*, 334 U.S. 266, 291, 68 S.Ct. 1049, 1062, 92 L.Ed. 1356 (1948). Respondent cites no case, nor has a search revealed any, that indicates that abuse of the writ exists in the circumstances involved here.

Respondent argues that the forceful reiteration in *Galtieri* of the goal of "one federal proceeding embracing all claims," 582 F.2d at 357, requires us to find an abuse of the writ here. The argument, however, is inapposite.

First, as noted above, Rule 9(b) did not change the judicial interpretation of the abuse of the writ standard and no cases evidence that abuse of the writ occurred here. Even *Galtieri*'s forceful statement of the goal of one habeas trip to the federal courts, of itself, would not require a finding of abuse here. Second, even if we were to view the *Galtieri* language as justifying a dismissal of Paprskar's second petition, we must recognize that at the time petitioner filed his second Section 2254 petition, *Galtieri* had not yet been decided by this Court en banc. Indeed, the magistrate's recommendation of dismissal, accepted by the district court, that stated that Paprskar's actions constituted a "classic abuse of the writ" preceded by a few days the announcement of *Galtieri*. Last, although *Galtieri* recognizes the role of Rule 9(b) in achieving "the goal," the *Galtieri* court explicitly recognized that a petitioner could avoid Rule 9(b) dismissal of a second petition if the second petition asserts claims that were unexhausted at the time the first petition was brought. 582 F.2d at 358–59.

The circumstances involved here are not those of *Jones v. Wainwright*, 608 F.2d 180 (5th Cir. 1979), in which this Court had an opportunity to determine whether the possibility of a second habeas corpus petition alleging claims unexhausted at the time the first petition was brought would require that the first petition be dismissed *without prejudice*.[13] There, a dismissal would not "bar the federal courthouse door" to any of the claims of the petitioner. *See Galtieri, supra*, 582 F.2d at 355. Conversely, in the present case, if the district court decision is allowed to stand, Paprskar will be forever foreclosed from a federal forum in which to assert constitutional challenges to his conviction. Equity does not compel—indeed it cannot tolerate—such a result.

■ Although we vacate the order of the district court, we cannot at this juncture mandate that the court reach the merits of Paprskar's petition. In its motion to dismiss the petition, respondent alleged prejudice resulting from petitioner's delay in bringing the second petition. *See* note 7, *supra*. Rule 9(a) offers a laches defense to delayed petitions. In *Galtieri*, the Court specifically contemplated Rule 9(a) as the appropriate tool to help prevent unnecessary successive petitions asserting claims previously unexhausted. 582 F.2d at 358–59; *see id.* at 374 & n.12 (Goldberg, J., dissenting). The district court on remand should consider respondent's Rule 9(a) defense. We note, however, that "'[d]elay alone is no bar to federal habeas relief

---

13. In *Jones*, the Court noted that "to the best of counsel's knowledge, [the unexhausted claims] will not be raised in the future[,]" 608 F.2d at 183, implying that an intention to raise the claims later might alter the Court's analysis. However, the Third Circuit has held that:

It is no bar to federal adjudication of the merits of the present claim that a separate claim for relief on a different ground is pending in a state court.

We recognize, as did the district court, the desirability, where circumstances permit, of including all grounds for habeas corpus in a single petition. But we think this does not outweigh the legitimate interest of a prisoner in obtaining prompt federal consideration of an adequate and properly asserted ground for relief that has been urged unsuccessfully before the state courts.

*United States ex rel. Boyance v. Myers*, 372 F.2d 111, 112 (3d Cir. 1967) (citation omitted).

. . . .' " *United States ex rel. Barksdale v. Blackburn*, 610 F.2d 253, 260 (5th Cir. 1980) [*quoting Hamilton v. Watkins*, 436 F.2d 1323, 1326 (5th Cir. 1970)]. In order to prevail on a laches claim respondent must make a particularized showing of prejudice. *See Jackson v. Estelle*, 570 F.2d 546, 547 (5th Cir. 1978).

VACATED and REMANDED.

COLEMAN, Chief Judge, concurring.

I agree that *in the present state of habeas corpus law* the judgment of the District Court must be vacated and remanded. Nevertheless, I must make a few comments on this case.

On January 20, 1970, ten years ago, Paprskar and a companion killed three people because Paprskar thought he had been sold "bad heroin". One of those killed was a four year old child. The father of the child had just been killed when the malefactors unexpectedly discovered the presence of the child, in an automobile parked at the scene. They discussed the matter and agreed that the child "had to be killed", which was done forthwith. A more deliberate, cold-blooded murder of an inoffensive child who hardly could have comprehended the danger he was in, or why he was in it, would be hard to imagine.

For the murder of the child, Paprskar was convicted and assessed the death penalty. This, however, was reversed because certain items seized as the result of a warrantless search had not been suppressed, *Paprskar v. State*, 484 S.W.2d 731 (Tex.Cr. App., 1972). Paprskar was never again tried for the murder of the child. Instead, represented by retained counsel, he was allowed to plead guilty to the indictments which charged the murder of the other two individuals and received concurrent sentences of twenty years. As a matter of ultimate fact, Paprskar was sentenced to twenty years for three murders.

He has been in prison for ten years. After unsuccessfully filing several other petitions for habeas corpus he again seeks to invoke the Constitution, on grounds never before suggested, to void his pleas of guilty and to avoid an unusually mild sentence.

Of course, the Constitution is supreme and must be obeyed. I do not quarrel with that. I do find it to be painfully incongruous that he who defies all civilized notions of due process in the summary theft of a human life is allowed, years after the event and years after his conviction has become final, to raise all kinds of constitutional claims which, if they existed, could have been raised at trial or, at least, soon thereafter.

The fault, of course, is not with the Great Writ. It lies in the manner in which it is allowed belatedly to be invoked. While Congress has commendably made some effort to limit jurisdiction for the entertainment of these eleventh hour attacks on state court convictions it is readily apparent to one regularly dealing with the subject that those efforts have not met with much success.

Very few belated applications for habeas corpus claim that the petitioner is innocent. The fundamental purpose of the Writ has been distorted. The confidence of the general public in the ability of state courts to bring criminals to justice has been eroded. The deterrent effect of law prohibiting criminal conduct has been seriously damaged. The decisions say that the Writ may not be used as a second appeal, but from experience the outlaws know better. Instead of being a bulwark of freedom for the citizen it has been allowed to become a last, and too often a sure, refuge for those who have respected neither the law nor the Constitution.

I would not limit the Writ, if I could, but I most assuredly would limit its application in situations such as we encounter in this case.

As I do here, I must follow the law as it exists. I do not understand, however, that I am not allowed to mention serious defects in the law.

In this case it is a fact that Paprskar did plead guilty in two cases. On remand, I would like to direct the attention of the District Court (if that is necessary) to the following language in *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973):

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [the trilogy]."