Benjamin A. BERRY

v.

C. Paul PHELPS, Secretary of the Department of Corrections, State of Louisiana and Frank Blackburn, Warden of Louisiana State Prison, Angola, Louisiana.

Civ. A. No. 86–3256.

United States District Court,
E.D. Louisiana.

July 28, 1986.

Samuel Dalton, Jefferson, La., for plaintiff.

John Mamoulides, Gretna, La., for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

For the second time, this Court is confronted with a Petition of Benjamin A. Berry for a Writ of Habeas Corpus and a Stay of Execution filed only days before the execution is scheduled to go forward. Having considered petitioner's seven previously asserted claims in 1983, this Court is well-acquainted with the case of Mr. Berry.

### I

*Procedural Background*

On October 26, 1978, Berry was convicted of first-degree murder for killing an off-duty Jefferson Parish Deputy Sheriff during an armed robbery of a bank in

Jefferson Parish. The jury sentenced Berry to death. La.R.S. of 1950, 14:30. Berry appealed to the Louisiana Supreme Court, which rejected all of the contentions he raised in a lengthy and well-reasoned opinion. See *State v. Berry*, 391 So.2d 406 (La.1980). Berry then petitioned the United States Supreme Court for a Writ of Certiorari, which was denied. See *Berry v. Louisiana*, 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981). Berry subsequently filed for post-conviction relief in state court. In his petition for habeas relief in the state court, Berry raised essentially five claims: (1) his trial counsel was inadequate and ineffective; (2) the jury was not given a list of aggravating and mitigating factors during the penalty deliberation phase; (3) the State suppressed exculpatory evidence; (4) improper argument by the prosecution; and (5) improper concessions by defense counsel. After a hearing, his petition was denied. The Louisiana Supreme Court affirmed the denial. See *State v. Berry*, 430 So.2d 1005 (La.1983).

On October 25, 1983, only days before his scheduled execution on November 1, 1983, petitioner filed for habeas relief and a stay of execution in this Court.

In addition to the five claims presented in his state petition, Berry also charged that the jury selection method violated constitutional standards, and that he had not received a constitutionally mandated death sentence review.

At that time, this Court noted its concern that the sentences of convicted individuals should not be thwarted by abuses of the judicial process. Nevertheless, the Court granted the Great Writ and stayed the execution of Mr. Berry so that his unexhausted claim to proportionality review could be heard in state court, and so that his claim of ineffective assistance of counsel could be considered. *Berry v. King*, 576 F.Supp. 943 (E.D.La.1983). He was at all times represented by the same lawyer who appears again on his behalf today. Petitioner appealed and the Fifth Circuit United States Court of Appeals remanded with instructions for a hearing, 736 F.2d 1524 (1984). By Order dated January 2, 1985, this Court approved the Findings and Recommendation of the U.S. Magistrate after an evidentiary hearing had been held as to Berry's remaining claims; the Court dismissed Berry's Petition and rescinded the prior stay of execution. Again, Berry appealed, raising a host of reasons. The Fifth Circuit affirmed this Court but stayed the execution to give petitioner an opportunity to file for a Writ of Certiorari to the United States Supreme Court. See *Berry v. King*, 765 F.2d 451 (5th Cir.1985). Berry did, and that petition was denied by the Supreme Court on June 2, 1986. *Berry v. King, cert. denied,* —— U.S. ——, 106 S.Ct. 2290, 90 L.Ed.2d 731 (1986.)

Berry's execution was reset for August 1, 1986. However, on July 24, 1986, Berry renewed his contest with the criminal justice system by bringing still a second Petition for the Great Writ of Habeas Corpus and a Stay of Execution in the state courts. Berry's petition was denied by the state district court on July 25, 1986. Berry's petition to the state's highest court was denied by six Justices of the Louisiana Supreme Court on July 28, 1986. All of his procedural routes have again been exhausted in the state courts, and Berry now brings his second Petition in this Court seeking the Great Writ and a stay of execution.

## II

### *Berry's Second Petition*

The only ground for relief Berry now urges is that the death penalty is applied in Louisiana in a racially discriminatory manner, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Specifically, he contends that statistics confirm that one who kills a white person is more likely to be sentenced to death than is one who kills a black person (regardless of the murderer's race). Berry is white and the person he murdered was white.

As statistical support, petitioner cites United States Department of Justice statistics published in 1971, and literature by social scientists dating back to 1973, which he claims support his argument. In addi-

tion, petitioner brings to this Court's attention two more recent local studies which are said to evidence the racial disparity in sentencing if the murdered person was white.

Although the claim of racially discriminatory application of the Louisiana death penalty is new to Berry's succession of post-conviction arguments, it certainly is not new to the law of this Circuit.

### III

*Present Law of Disparate Sentencing*

In *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir.1978), a challenge was made to the Florida capital sentencing statute on the ground that it was being applied in a racially discriminatory manner against defendants convicted of murdering whites as opposed to blacks, in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution. Berry makes the identical claim with respect to the Louisiana statute. Like Berry, the defendant in *Spinkellink* was white, as was his victim. Like Berry, the defendant relied on statistical evidence which was said to support the claim of disparate sentencing based upon the race of the victim. The Fifth Circuit recognized the gravity of the claim but rejected the challenge because of the quality of the statistical evidence which was offered, and held defendant failed to prove a discriminatory intent or purpose in the administration of the death penalty statute.

Subsequently, in *Smith v. Balkcom*, 671 F.2d 858 (1982), *modifying* 660 F.2d 573 (5th Cir.1981), *cert. den.* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982), the Fifth Circuit had occasion to consider an identical challenge to the Georgia capital sentencing statute. Again, the Court recognized the seriousness of the claim regarding racially disparate sentencing, but deemed the statistical evidence put in by the defendant to be insufficient to support an inference of discriminatory intent or purpose and held that it failed for "countless racially neutral variables". *Id.* at 859.

*Spinkellink* and *Smith* remain the touchstone of the Fifth Circuit's analysis of such claims. The Louisiana statute has received the identical Fifth Circuit scrutiny. In *Prejean v. Maggio*, 765 F.2d 482 (5th Cir.1985), *cert. pet. pending* (Sup.Ct. No. 85–5609), the defendant claimed to have statistical proof that Louisiana juries act on a racial basis in imposing the death sentence. Again, the Court rejected the challenge based on the quality of the evidence, which failed to account for the "numerous racially neutral variables ... present in the sentencing of capital crimes", and said it was too "speculative and conclusory" to entitle petitioner to a hearing. *Id.* at 486. See also, *Brogdon v. Blackburn*, 790 F.2d 1164 (5th Cir.1986).

*Spinkellink, Smith* and *Prejean* clearly teach that to prove a claim of discrimination in capital sentencing in this Circuit, the petitioner must show strong evidence of discriminatory intent or purpose against the petitioner. Disparate impact will not complete the equation unless it is so strong that it will compel an inference of intent.

Notwithstanding the availability of the claim, as evidenced by at least two Fifth Circuit opinions which were in the literature at the time Berry's original petition for relief was filed in federal court on October 25, 1983, Berry nevertheless failed to make the claim in his first petition and did not do so until now, just days before his newly scheduled execution. In doing so, Berry not only mocks and manipulates our system of Justice, but by proceeding with his piecemeal tactic he has directly implicated the "abuse of writ" doctrine.

### IV

*Abuse of Writ*

At the time this Court granted petitioner's original writ for habeas relief and stayed Berry's execution pending the outcome of two of the seven claims which were then asserted, the Court counseled in the strongest terms that "[w]hen a life is at stake, Judges ought not be trigger happy; but they should not become manipulated". *Berry v. King, supra* 576 F.Supp. at 950.

The abuse of writ doctrine speaks plainly to the issue and governs this case. Title 28 U.S.C. 2244 defines the power of federal courts to eliminate the debasing burden placed upon the judicial process by successive habeas petitions. Section 2244 provides that there is no need to consider a new claim raised in a successive writ, such as the one now before the Court, unless the Court is satisfied "that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ". Rule 9(b) of the Rules Governing Section 2254 Cases, provides:

> "A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ."

■ The recent Fifth Circuit decision of *Daniels v. Blackburn*, 763 F.2d 705 (5th Cir.1985), is important here. In *Daniels*, the Court reiterated "that the piecemeal presentation of post-conviction attacks cannot be tolerated". *Id.* at 706. The "proper inquiry", the Court noted, was whether the petitioner withheld grounds from a prior petition "without legal excuse". *Id.* at 707. Legal excuse was defined to exist "if 'new claim[s] [are] based on facts or legal theories about which [the petitioner] had no knowledge when prosecuting his prior habeas petition." *Id.* The Court commented that " '[a] petitioner can prove that he has not abused the writ by showing, for example, [that] new facts have arisen since his prior petition, or that the law has changed in some substantive manner in the interim.' ". *Id.* Once the issue of abuse of the writ has been raised either by the prosecution or sua sponte by the Court (as in the instant case),[1] the petitioner bears the burden of establishing "by a preponderance of the evidence that he has not abused the writ". *Id.*

Berry claims that his successive writ is not an abuse because it relies on new facts, and because there is a possibility of a potential change in the law as a result of the Supreme Court's recent grant of certiorari in two Eleventh Circuit cases in which the claim of racial application of the death penalty is at issue. See, *McCleskey v. Kemp*, 753 F.2d 877 (11th Cir.1985) (en banc), *cert. granted*, —— U.S. ——, 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986) and *Hitchcock v. Wainwright*, 745 F.2d 1332 (11th Cir.1985), *cert. granted*, —— U.S. ——, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986).

■ For several reasons, this Court finds that petitioner has failed to sustain his evidentiary burden and concludes that the successive petition constitutes an abuse of the writ.

It certainly cannot be seriously asserted that Berry's claim of discriminatory application of the death penalty was a legal theory about which he had "no knowledge" when prosecuting his first habeas petition in 1983. *Daniels v. Blackburn, supra,* at 707. As has previously been pointed out, prevailing Fifth Circuit jurisprudence confirmed the gravity of such a claim. See, *Smith v. Balkcom, supra,* and *Spinkellink v. Wainwright, supra.* Further, the law is clear that since Berry was represented by counsel in the prior Petition, the "knowledge chargeable to ... competent habeas counsel" is imputed to him. *Daniels v. Blackburn, supra* at 707. Clearly, then, petitioner either knew or should have known of the claim which he raises now for the first time. The law is equally clear that "[a] petitioner who fails to include all his grounds for relief in his first habeas petition risks dismissal of claims raised for the first time in later petitions". *Booker v. Wainwright*, 764 F.2d 1371, 1376 (11th Cir. 1985), *cert. den.,* —— U.S. ——, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985).

Nor does the fact that the Supreme Court has chosen to grant certiorari in the two Eleventh Circuit cases regarding this

---

1. Counsel for both sides were notified by the Court even prior to the filing of the present Petition.

claim insulate petitioner from the application of the abusive writ doctrine. While petitioner hopes that the Eleventh Circuit cases will be resolved by the Supreme Court in a manner which eases the burden one must sustain in order to successfully make out a claim of discriminatory application of the death penalty (and, further, that such changes in the law would be applied retroactively), the abusive writ doctrine does not, and cannot possibly, depend upon such wishful thinking and rank speculation. The claim has always been petitioner's to make. The law has not changed. It might not change. But if it is changed, one cannot safely foretell it would be retroactive. That he chose to withhold the claim from the original petition was counsel's decision, for which there are legal consequences. As the Eleventh Circuit stated in *Booker v. Wainwright, supra* at 1377:

> "The question is whether the petitioner knew of the possibility of making such a claim, not whether he believed that the claim itself was meritorious. To excuse every petitioner who later raises a claim that he earlier believed lacked merit would be to carve out an exception for the very group of successive petitioners targeted by [*Sanders v. United States,* 373 U.S. 1 [83 S.Ct. 1068, 10 L.Ed.2d 148] (1963)] and Rule 9(b)—those petitions lacking serious merit, brought only for the purpose of delay or vexation. Furthermore, if courts were saddled with the task of deciding whether a prisoner had at one time believed the claim was insubstantial, a factor in ascertaining that belief would be the apparent merit of the claim itself. The very purpose of the abuse of the writ doctrine is to spare the judicial system the burden of exploring the merits of such claims."

Petitioner wholly failed to raise or even hint at this claim in his original petition. He did not even try to produce statistical evidence of disparity under current Fifth Circuit law. In doing so, he impermissibly opted for piecemeal invocation of the writ, which the law will not countenance.

Nor can the fact that petitioner has cited more recent studies, in addition to those available to him at the time of the original petition, serve to protect him from his responsibility to have raised the issue in his original petition. The plain fact is that there was evidence available, in the form of statistical data and literature by social scientists published in 1971 and 1973, at the time of Berry's original petition, which suggested the disparity he now asserts. Thus, *Briley v. Booker,* 746 F.2d 225 (4th Cir. 1984) is strikingly similar to this case. In *Briley,* the Fourth Circuit affirmed the district court's dismissal of a second petition asserting the claim of discriminatory application of the Virginia capital sentencing statute on the same basis herein asserted. Like Berry, Briley also relied on a study which had become available after the original petition had been filed. Nevertheless, the Fourth Circuit found that "the data upon which Briley relies to challenge the application of the Virginia death penalty and the argument itself were available prior to action on the first habeas corpus petition." *Id.* at 227. The Court found no error in the district court's ruling that the petitioner had abused the writ by not raising this issue earlier.

While this Court is mindful of the Fifth Circuit's admonition that the abuse of writ doctrine should be "of rare and extraordinary application", *Paprskar v. Estelle,* 612 F.2d 1003, 1007 (5th Cir.), *cert. den.,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980), subsequent experience has prompted five members of the Supreme Court to warn, in declaring a successive writ abusive, that:

> "A pattern seems to be developing in capital cases of multiple review in which claims that could have been presented years ago are brought forward—often in a piecemeal fashion—only after the execution date is set or becomes imminent. Federal courts should not continue to tolerate—even in capital cases—this type of abuse of the writ of habeas corpus."

*Woodard v. Hutchins,* 464 U.S. 377, 380, 104 S.Ct. 752, 753, 78 L.Ed.2d 541 (1984) (Powell, J., concurring in per curiam opinion).

Petitioner was convicted and sentenced nearly eight years ago. In the interim, he has presented a myriad of claims to courts, both state and federal, and at all levels. He has had competent, aggressive counsel. The case has been exhaustively reviewed by the courts and Berry has received many, many days in court. While this Court is sensitive to the fact that this is a capital case, this Court cannot, by reason of this fact alone, ignore Rule 9's central public policy admonishment that all claims be raised in the first petition. The Rule demands adherence in order to accommodate the "needs of first-time litigants lest the search for justice for all become satisfactory justice for too few". *Miller v. Bordenkircher*, 764 F.2d 245, 248 (4th Cir. 1985).

For all of the above reasons,

IT IS ORDERED:

The petition of Benjamim A. Berry for the Writ of Habeas Corpus and for a Stay of Execution is DENIED, and a Certificate of Probable Cause is DENIED.