**Chester Lee WICKER,
Petitioner-Appellant,**

**v.**

**O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellee.**

**No. 86–2660.**

United States Court of Appeals,
Fifth Circuit.

Aug. 23, 1986.

Charlotte Harris, Wichita Falls, Tex., Bruce V. Griffiths, Staff Counsel, ACLU, Houston, Tex., for petitioner-appellant.

Jim Mattox, Atty. Gen., Paula C. Offenhauser, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GEE, RUBIN, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Chester Lee Wicker was convicted of capital murder and sentenced to death. He

---

now comes to this court for the second time seeking habeas corpus relief on two grounds. The district court found each of Wicker's claims to be meritless and denied him the certificate of probable cause that is required for an appeal to this court. We agree with the district court that Wicker now presents no issue that jurists of reason would consider debatable and, therefore, affirm the orders denying him both a certificate of probable cause and a stay of execution.

## I.

The facts of this case are discussed fully in our opinion addressing Wicker's previous habeas corpus petition.[1] The procedural history is as follows: On February 5, 1981, in the 56th Judicial District Court of Galveston County, Texas, Wicker was convicted of the murder of Suzanne Knuth in April, 1980, and sentenced to death. The evidence showed that Wicker had abducted Knuth, assaulted her, and then buried her in a shallow grave on a beach near Galveston, Texas. There was evidence that, although critically wounded, Knuth may have been alive when buried. Wicker's conviction and sentence were affirmed by the Court of Criminal Appeals of Texas[2] and certiorari was denied by the Supreme Court of the United States on October 9, 1984.[3]

Wicker then filed an application for a writ of habeas corpus and motion to withdraw the death warrant in a Texas state court on January 17, 1985. That application was denied by the trial court and, on January 23, 1985, Wicker's counsel presented the application to the Court of Criminal Appeals of Texas where it was denied without opinion on February 4, 1985.

On February 5, 1985, Wicker filed an application for a writ of habeas corpus and a motion for stay of execution in the United States District Court for the Eastern District of Texas, Galveston Division. The

court granted Wicker's motion and stayed his execution pending further order on February 6, 1985. By a separate order, the district court granted Wicker an evidentiary hearing which was set for April 9, 1985, and held on April 9 and 10. Finding no merit in his claims, the district court denied Wicker's petition on June 26, 1985. We heard oral argument, considered the case fully, and, in a written opinion, affirmed the district court judgment on February 18, 1986. Again Wicker sought consideration by the Supreme Court, and again certiorari was denied.

Thereafter, on July 25, 1986, Judge Larry Gist, sitting as judge in the 56th Judicial District Court of Galveston County, resentenced Wicker to be executed by lethal injection on August 26, 1986. On August 18, 23 days later, but only eight days before the sentence was to be carried out, Wicker filed a second application for writ of habeas corpus in the Texas trial court and a motion to withdraw the death warrant. He filed a motion for stay of execution with the Texas Court of Criminal Appeals the following day. Both courts denied relief on August 20, 1986. He then turned to federal district court again, where he filed a petition for habeas corpus and stay of execution on August 21, 1986. District Judge Hugh Gibson entered a judgment denying him relief on August 22, 1986, together with a statement of reasons, and refused to issue a certificate of probable cause.

## II.

Wicker, a white male, asserts that he has been denied equal protection of the laws because in Texas the death penalty is arbitrarily imposed based on the race of the victim: regardless of the race of the defendant, if the victim is white, he asserts, prosecutors more frequently charge the defendant with capital murder and seek the

---

1. *Wicker v. McCotter,* 783 F.2d 487 (5th Cir. 1986).

2. *Wicker v. State,* 667 S.W.2d 137 (Tex.Cr.App. 1984).

3. *Wicker v. Texas,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).

death penalty than prosecutors do when the victim is of another race. Wicker also charges that a defendant of any race who is tried for capital murder of a white person has a significantly greater likelihood of being convicted and sentenced to death than a defendant who is charged with murder of a victim of another race.

Although this circuit has never addressed the question of whether discrimination against a defendant based solely upon the race of his victim denies the defendant equal protection of the laws, we have held repeatedly held that discrimination against defendants because of their own race, economic status, or sex constitutes an equal protection violation. A claim such as Wicker's has, however, been considered by the Eleventh Circuit Court of Appeals employing traditional equal protection analysis.[4] But even assuming that Wicker has stated a valid claim, the statistical evidence upon which he relies remains inadequate under current Fifth Circuit[5] and Eleventh Circuit[6] law, to show that he has been the victim of discrimination. In *Prejean v. Maggio*,[7] we stated:

> To create a fact issue warranting an evidentiary hearing, a statistical proffer must be "so strong that the results would permit no other inference but that they are the product of racially discriminatory intent or purpose." *Smith v. Balkcom*, 671 F.2d 858, 859, modifying 660 F.2d 573 (5th Cir.), *cert. denied*, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). Prejean's tender does not meet this standard.
>
> *Smith v. Balkcom*, Id., and *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir. 1978), remain the touchstone of our analysis. In both *Smith* and *Spinkellink*, we said the proof must establish

specific acts evidencing intentional or purposeful discrimination *"against the petitioner"* on the basis of race. *Id.* at 614 n. 40, quoted in *Smith*, 660 F.2d at 585 (emphasis supplied in *Smith*).

We are, of course, aware that the Supreme Court has granted a writ of certiorari in *McCleskey v. Kemp*[8] in which the issues stated include: Whether a proven disparity in the imposition of capital sentences, reflecting a systematic bias of death-sentencing outcomes against black defendants and those whose victims are white, offends the eighth and fourteenth amendments irrespective of its magnitude. The Court has also granted a writ in *Hitchcock v. Wainwright*[9] to consider inter alia: whether Hitchcock should be provided the opportunity to prove at an evidentiary hearing his claim that the death penalty is being arbitrarily applied in Florida on the basis of race and other impermissible factors in violation of the eighth and fourteenth amendments especially in view of the new standards for evaluating such claims announced by the Florida Court of Appeals.

The significance of the Supreme Court's action in these two cases is not clear. McCleskey is black and contends that the State of Georgia is applying its death penalty in a manner that discriminates against blacks. In *Berry* we stated that we were unable to determine whether Hitchcock's case involves the identical situation. Whether the Court views the issues in these cases as involving discrimination against black defendants or as discrimination against all defendants, regardless of their race, we cannot determine.

■ In the absence of a declaration by the Supreme Court that executions should be stayed in cases presenting the issue

---

**4.** *Adams v. Wainwright*, 709 F.2d 1443 (11th Cir.1983).

**5.** *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir.1978); *Smith v. Balkcom*, 671 F.2d 858 (5th Cir.1981); *Adams v. Wainwright*, 709 F.2d 1443 (11th Cir.1983); *Sullivan v. Wainwright*, 721 F.2d 316 (11th Cir.1983); *Berry v. Phelps*, 795 F.2d 504 (5th Cir.1986).

**6.** *McCleskey v. Kemp*, 753 F.2d 877 (11th Cir. 1985) (en banc), *cert. granted*, — U.S. —, 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986).

**7.** 765 F.2d 482, 486 (5th Cir.1985).

**8.** — U.S. —, 106 S.Ct. 3331, 92 L.Ed.2d 737.

**9.** — U.S. —, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986).

raised by Wicker, we must follow our circuit's precedents and deny both a certificate of probable cause and a stay of execution on this issue. The grant of certiorari in *Hitchcock* and *McCleskey* is insufficient *per se* to raise in this case the requisite to a certificate of probable cause: that the petitioner presents an issue that jurists of reason would consider debatable on the evidence proferred to us,[10] but the fact that the Court has agreed to consider these cases does not alter the authority of our prior decisions. We are, however, releasing this opinion in time to permit Wicker to seek review by the Supreme Court so that, if that Court considers it advisable to review our opinion, it may issue a writ.

### III.

Wicker's second claim is that he was denied due process, as guaranteed to him by the fourteenth and fifth amendments to the Constitution, by the introduction of evidence that the body of Suzanne Knuth was found. Wicker contends that the body was discovered only as the result of his having been illegally arrested and having made an involuntary statement. After a hearing whose scope and fairness have never been challenged by Wicker, the state court found that the body of the victim and her personal effects, which were located on Crystal Beach, near Galveston Texas, would inevitably have been discovered by law enforcement officers or private citizens had Wicker not taken the police to the scene. These findings were upheld by the Texas Court of Criminal Appeals on appeal and, upon an independent review of the record occasioned by Wicker's previous habeas petition, sustained by this court.

At that time, we based our holding on the Supreme Court decision in *Stone v. Powell.*[11] In an effort to dress up the same argument that has already been rejected, Wicker presents it in another fashion, arguing that our earlier decision is not controlling here, both because that decision was based on the argument then made that his fourth amendment rights had been violated and because the *Stone v. Powell*—reconsideration bar applies only to fourth amendment claims. Wicker asserts he is now making a different claim, denial of due process, a violation of the fourteenth and fifth amendments.

▪ The legal basis for Wicker's current claim may be different but, at least in the present instance, the result is the same. The question whether the body would inevitably have been found is a question of fact, pure and simple. If the evidence Wicker challenges would inevitably have been discovered regardless of the wrongs he alleges he suffered, it remains admissible.[12] In *Townsend v. Sain,*[13] the Supreme Court held that a federal evidentiary hearing on a habeas claim adjudicated by a state court is required "unless the state-court trier of fact has after a full hearing reliably found the relevant facts."[14] By inference, if a state court has conducted a full hearing and reliably found the relevant facts, no federal hearing is required. The Court made this clear by stating that a federal district court "*may,* where the state court has reliably found the relevant facts, defer to the state court's findings of fact."[15] Congress, thereafter, amended the federal habeas corpus statute, 28 U.S.C. § 2254, to eliminate the discretion given a federal court. Section 2254 now provides that, in a federal habeas corpus hearing on a state-prisoner claim, "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for a writ ... [was a party], evidenced

---

10. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

11. 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

12. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

13. 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

14. *Id.* 372 U.S. at 314, 83 S.Ct. at 757.

15. *Id.* 372 U.S. at 318, 83 S.Ct. at 760 (emphasis added).

by a written finding, written opinion, or other reliable and adequate written indicia, *shall be presumed to be correct,*"[16] unless the applicant shall establish one of the grounds stated in the statute. None of these has been shown and indeed none of them is urged. Instead, we are importuned to require a federal district court to reconsider the evidence and to hold that the state court was wrong. The statute forbids us that latitude.

Accordingly, it is ordered that the applications for a certificate of probable cause and for a stay of execution are DENIED. As a result the judgment of the district court denying habeas relief is AFFIRMED.

---

**16.** 28 U.S.C. § 2254(d) (emphasis added).