**Willie WATSON, Jr.,**
**Petitioner-Appellant,**

v.

**Frank BLACKBURN, Warden, and the State of Louisiana,**
**Respondent-Appellee.**

No. 86–3620.

United States Court of Appeals,
Fifth Circuit.

Sept. 2, 1986.

Ralph S. Whalen, Jr., New Orleans, La., Jed Stone, Waukegan, Ill., for petitioner-appellant.

William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., New Orleans, La., Harry J. Morel, Jr., Dist. Atty., Kurt F. Sins, Asst. Dist. Atty., Hahnville, La., for respondent-appellee.

Before GEE, JOHNSON and W. EUGENE DAVIS, Circuit Judges.

GEE, Circuit Judge:

Watson's appeal raises one issue only, a claim of discrimination in the imposition of the death penalty on blacks who murder whites. We agree with the district court that *Wicker v. McCotter,* 798 F.2d 155 (5th Cir.1986) represents the law of our Circuit and forecloses his claim. As a panel of our Court, we are bound to follow that law until the Supreme Court or our Court, sitting en banc, changes it.

The motion of Mr. Jed Stone to participate as co-counsel in this appeal is GRANTED.

The judgment of the district court denying habeas relief is AFFIRMED.

The applications for a certificate of probable cause and for a stay of execution are DENIED.

JOHNSON, Circuit Judge, dissenting:

Being of the view that Willie Watson's application for a stay of execution should be granted, I respectfully dissent.[1] The legal standards applicable to Mr. Watson's application are presently uncertain, the Supreme Court having granted certiorari in *McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.), *cert. granted,* —— U.S. ——, 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986), and *Hitchcock v. Wainwright, cert. granted,* —— U.S. ——, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986). That the Supreme Court may in the very near, if not the immediate, future alter the standards governing Mr. Watson's claim that the death penalty is imposed in Louisiana in a racially discriminatory manner is without question.

Of even greater importance, the Supreme Court's standard for granting stays in cases raising the *McCleskey* issue is at best unclear, at worst random. In *Berry v. Phelps,* 795 F.2d 504 (5th Cir.1986), the petitioner raised a *single* issue, the same precise issue as presented here by Mr. Watson: whether the State of Louisiana discriminatorily administers its death penalty against defendants accused of killing Cau-

---

1. The temporary nature of the stay at issue requires emphasis. That stay would be in effect pending only the filing and disposition of Mr. Watson's petition for a writ of certiorari.

casians. Citing our decision in *Prejean v. Maggio*, 765 F.2d 482 (5th Cir.1985), a panel of this Court concluded that "[o]ur precedents clearly establish that a state prisoner is not entitled to habeas relief on this ground." The panel further concluded that the Supreme Court's grant of certiorari in *McCleskey* and *Hitchcock* did not require granting Mr. Berry's application for a stay of execution. On Wednesday, August 6, 1986, however, the Supreme Court of the United States, in a one paragraph order, granted Mr. Berry's application for a stay of execution. Once again, the *sole* issue presented by Mr. Berry's application was the *McCleskey* issue.

Despite its action in *Berry*, the Supreme Court less than three weeks later refused to grant a stay of execution in a case also raising the *McCleskey* issue. In *Wicker v. McCotter*, 798 F.2d 155 (5th Cir.1986), the petitioner, Chester Lee Wicker, argued that the State of Texas discriminatorily administers its death penalty against defendants accused of killing Caucasians. A panel of this Court, without mentioning the Supreme Court's action in *Berry*, concluded that the grant of certiorari in *McCleskey* and *Hitchcock* did not require granting Mr. Wicker's application for a stay of execution. On Monday, August 25, 1986, the Supreme Court, in a one sentence order and with four members dissenting, denied Mr. Wicker's application for a stay of execution. Chester Lee Wicker was executed the following morning. To my mind the conflict between *Berry* and *Wicker* is positive, certain and inescapable.

What is clear, however, is that this Court, the United States Court of Appeals for the Fifth Circuit, has attached precedential weight to Supreme Court orders granting stays in cases raising issues pending before that Court. In *Rault v. Louisiana*, 774 F.2d 675, 677 (5th Cir.1985), the petitioner raised the *Grigsby* issue that was, at that time, pending before the Su-

preme Court in *Lockhart v. McCree*, —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). This Court first noted that our prior decisions had rejected the *Grigsby* claim. We nevertheless granted Rault's application for stay of execution, noting that the Supreme Court had recently granted stays in two cases raising only the *Grigsby* issue.

Our reasons for doing so are apparent. Unlike other applications, errors in rejecting applications for stay of execution cannot be corrected. "There can be no writs of habeas corpus from a casket." *Bass v. Estelle*, 696 F.2d 1154, 1161 (5th Cir.1983) (J. Goldberg, concurring). Where the Supreme Court has indicated that stays of execution will be granted in cases raising a particular issue, lower courts have a solemn responsibility to ensure that no petitioner raising such an issue is erroneously executed. Granting stays at this level, or at the district court level, helps make certain that no case "slips through the cracks" in its progress to the Supreme Court. Can it be disputed that such caution is justified, no matter how slight the risk, when a human life is at stake?

In *Berry*, the Supreme Court granted a stay of execution in a Louisiana case which clearly, directly and unambiguously presented *only* the *McCleskey* issue. The Supreme Court's action in *Berry* is direct authority requiring, under Fifth Circuit case law, that we grant Mr. Watson's application for a stay of execution. *See Rault v. Louisiana*, 774 F.2d 675 (5th Cir.1985). Mr. Watson's case cannot be distinguished; it also is an application for stay of execution; it too comes from Louisiana; it likewise raises *only* the *McCleskey* issue. The majority does not explain, because it cannot, how the *Berry* case is different.

It is the Supreme Court's action in *Wicker* that has muddied the waters.[2] *Wicker* may indicate that the Supreme Court will

2. The muddy waters prompted a majority of the members of this Court on August 28, 1986, to attempt some clarification. The result was that all Fifth Circuit Chief District Judges were advised as follows:

The attached opinion of the panel in *Wicker v. McCotter*, 798 F.2d 155 expresses the law of this Circuit on the subject of stays of execution in death penalty cases. Please advise the judges of your court accordingly.

no longer grant stays in cases raising the *McCleskey* issue.[3] Neither the majority nor the dissent from the United States Supreme Court's order of August 25, 1986, denying Mr. Wicker's request for a stay of execution provides any guidance to this Court or to the district courts of this Circuit. Rather, the Supreme Court's actions in *Wicker* and *Berry* have given two diametrically opposed signals; one or the other simply cannot stand. Given the utter confusion surrounding the Supreme Court's action, which defies explanation by the limited wisdom of this Court, Mr. Watson's application for a stay presents an issue clearly debatable among jurists of reason.

To remove all uncertainty and avoid an unnecessary risk to the life of Mr. Watson, I would grant the application for a stay of execution and let the Supreme Court vacate the stay if indeed we are to be guided by *Wicker* rather than *Berry*.

**3.** It is specifically noted, however, that the Supreme Court has not vacated the stays it previously granted in *Berry* and in other cases also raising the *McCleskey* issue, including *Wingo v.* *Blackburn,* —— U.S. ——, 107 S.Ct. 9, 92 L.Ed.2d —— and *Messer v. Kemp,* —— U.S. ——, 106 S.Ct. 3342, 92 L.Ed.2d ——.