**Alvin R. MOORE, Jr.,
Petitioner-Appellee
Cross-Appellant,**

v.

**Frank BLACKBURN, Warden, Louisiana State Penitentiary, Respondent-Appellant Cross-Appellee.**

**No. 86–4595.**

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1986.

Stay Granted Jan. 16, 1987.
See 107 S.Ct. 919.

Henry N. Brown, Jr., Dist. Atty., Benton, La., for respondent-appellant cross-appellee.

Jack & Hudsmith, Rebecca L. Hudsmith, Wellborn Jack, Jr., Shreveport, La., for petitioner-appellee cross-appellant.

Before GEE, POLITZ and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Petitioner, Alvin R. Moore, Jr., who received a stay of execution pending appeal from the United States Supreme Court on September 11, 1986, — U.S. —, 107 S.Ct. 25, 92 L.Ed.2d 776, applies for a certificate of probable cause to authorize appeal to this court from a judgment of the district court denying his petition for a writ of habeas corpus, and moves for a stay of execution pending the Supreme Court's decision in *McCleskey v. Kemp*, 753 F.2d 877 (11th Cir.1985), *cert. granted*, — U.S. —, 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986), and *Hitchcock v. Wainwright*, 770 F.2d 1514 (11th Cir.1985), *cert. granted*, — U.S. —, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986).

It is ORDERED that Moore's application for a certificate of probable cause and his motion for a stay of execution are denied.

I.

On July 9, 1980, Moore stabbed Jo Ann Wilson to death at her home in Bossier City, Louisiana. Evidence admitted at trial revealed that Wilson had been stabbed more than thirteen times. The victim's four-month old daughter was present throughout the incident. According to trial testimony, the victim pled with Moore not to harm her or her child and to take what he wanted and leave. Moore then left the victim's home and bragged to two companions waiting in a vehicle that he stabbed that "bitch" many times; thereafter, the three went to eat. Money, stereo components, and other items from the home of the victim and her husband were found in the trunk of Moore's car.[1]

The evidence at Moore's trial consisted of scientific comparisons, physical evidence recovered from Moore's vehicle and other areas, direct testimony and the testimony of Moore's two companions. Moore testified in his defense that the victim voluntarily had sex with him and paid him for the pleasure.

Moore was convicted of first-degree murder. At the sentencing phase of his trial, both sides reintroduced all of the evidence that had been submitted at the guilt phase. The jury found three aggravating circumstances: (1) that Moore was engaged in the commission or attempted commission of aggravated rape, aggravated burglary, and armed robbery; (2) that Moore knowingly created a risk of death or great bodily harm to more than one person; and (3) that the offense was committed in an especially heinous, atrocious, or cruel manner. The jury recommended the death penalty. On appeal, the Supreme Court of Louisiana affirmed Moore's conviction and sentence. *State v. Moore*, 414 So.2d 340 (La.1982).

---

**1.** The factual background of this case is more fully set forth in one of our earlier opinions in this case, *Moore v. Maggio*, 740 F.2d 308, 310–13

(5th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985).

Moore petitioned for a writ of certiorari to the United States Supreme Court, and the Court stayed Moore's execution pending disposition of his certiorari petition. On June 27, 1983, the Supreme Court denied Moore's petition for a writ of certiorari, *Moore v. Louisiana,* 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983), and Moore was scheduled to be executed on August 11, 1983. Moore petitioned for habeas relief in the state district court and that court denied the petition. Moore than sought habeas relief in the Louisiana Supreme Court, which relief also was denied. *Moore v. Maggio,* 435 So.2d 997 (La.1983).

Having exhausted his state post-conviction remedies, Moore filed a petition for federal habeas relief and a motion for a stay of execution in the federal district court on August 9, 1983. The district court issued an order staying Moore's execution until the court could pass on Moore's habeas petition. In his first federal habeas petition, Moore listed seven bases for relief, including what have come to be known as the *"Grigsby* issue"[2] and the *"McCleskey* issue":[3]

(1) He received ineffective assistance of counsel at the guilt phase of the trial;

(2) He received ineffective assistance of counsel at the penalty phase of the trial;

(3) The Louisiana Supreme Court failed to engage in a meaningful appellate review designed to ensure that death was the appropriate sentence;

(4) One of the three aggravating circumstances found by the jury was unsupported by the evidence;

(5) The trial court's exclusion of jurors who were unambiguously opposed to imposing the death penalty resulted in a biased and unfair jury—the *Grigsby* issue;

(6) The trial court gave the jury inadequate instructions concerning imposition of the death penalty; and

(7) The death penalty in Louisiana, as well as in the United States, is applied in a racially discriminatory and arbitrary manner—the *McCleskey* issue.

In October, 1983, the district court held a two-day evidentiary hearing concerning Moore's claim of ineffective assistance of counsel at the penalty phase of his trial. Following the hearing, the court concluded that Moore had been denied effective assistance of counsel during the penalty phase of his trial. The court vacated Moore's death sentence and ordered a new sentencing trial. The court found it unnecessary to address Moore's remaining contentions because they related to Moore's sentence, which the court was vacating.

On appeal, this court reversed the district court's partial grant of federal habeas relief, *Moore v. Maggio,* 740 F.2d 308 (5th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985), and vacated the district court's stay of execution. Moore applied to the Supreme Court for a stay of execution pending the filing and disposition of a petition for a writ of certiorari. The stay was granted on November 8, 1984. The United States Supreme Court denied the petition for a writ of certiorari on June 24, 1985. The motion for rehearing was denied and Moore's execution was rescheduled for October 7, 1985.

On September 30, 1985, Moore filed another habeas petition in the state district court and the court denied the petition. Moore then sought relief in the Louisiana Supreme Court, which relief was denied on October 1, 1985. Thereafter, Moore again sought post-conviction relief in the federal district court by filing his second federal habeas petition. The second federal habeas petition, like Moore's first federal habeas petition, raised the *Grigsby* issue—the issue of "death-qualified" juries that was raised in the *Grigsby* case, then pending on a petition for writ of certiorari before the United States Supreme Court. Additional-

---

**2.** *See Grigsby v. Mabry,* 758 F.2d 226 (8th Cir. 1985), *rev'd, Lockhart v. McCree,* — U.S. —, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

**3.** *See McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985), *cert. granted,* — U.S. — 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986).

ly, the second petition raised the issue of the asserted prejudicial effect of the prosecutor's statements concerning appellate review in the prosecutor's closing argument in light of the Supreme Court's decision in *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

On October 2, 1985, the federal district court denied Moore's second petition for a writ of habeas corpus and his motion for a stay of execution. Thereafter, this court denied Moore's application for a certificate of probable cause and his motion for a stay of execution, finding that the two issues raised in Moore's second federal habeas petition were successive writs. We found that the issues were determined adversely to Moore in the prior petition, the prior determination was on the merits, and the ends of justice would not have been served by reaching the merits again.[4] *See Moore v. Blackburn,* 774 F.2d 97 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2904, 90 L.Ed.2d 990 (1986).

The United States Supreme Court granted a stay of execution pending disposition of Moore's petition for a writ of certiorari on October 4, 1985, and the petition for writ of certiorari was denied on June 9, 1986. *Moore v. Blackburn,* —— U.S. ——, 106 S.Ct. 2904, 90 L.Ed.2d 990 (1986). A July 10, 1986 execution date was set. However, on July 1, 1986, the governor of Louisiana issued Moore a reprieve until July 21, 1986, thereby staying the July 10 execution date. After a hearing on July 14, 1986, the Louisiana Board of Pardons rejected Moore's request for clemency and thereafter, the execution was rescheduled for August 22, 1986.

Moore then filed his third federal habeas petition, raising only two claims—the *McCleskey* issue and the issue of ineffective assistance of counsel at the penalty phase of his trial. Both of those claims were raised in Moore's first federal habeas petition.

On August 18, 1986, the federal district court granted Moore's request for a stay of execution and denied his accompanying request for federal habeas relief. On appeal, this court vacated the August 18th stay. Thereafter, the state trial court set a new execution date of September 23, 1986. That execution date was stayed by the United States Supreme Court on September 11, 1986. This, the seventh stay received by Moore, was granted "pending appeal to the United States Court of Appeals for the Fifth Circuit." The district court denied a certificate of probable cause and we now have before us Moore's application for a certificate of probable cause and his motion for a stay of execution.

The long and the short of this description of the post-conviction history of Moore's case is that Moore has shown a propensity for raising in each successive petition the then-current Supreme Court case—first *Grigsby* and now *McCleskey*—and that this court has shown its unwillingness to entertain these petitions. We continue to be so unwilling.

II.

Moore's present application for a certificate of probable cause and for a stay of execution sets forth two grounds for relief. First, Moore claims that the death penalty is discriminatorily applied and that he is entitled to the relief he requests based upon the Supreme Court's grant of certiorari in *McCleskey* and *Hitchcock,* cases raising the issue of the discriminatory application of the death penalty. In support of his present *McCleskey* claim, Moore proffers two studies—the 1985 De Parle and Smith study and the 1986 Klemm pa-

---

**4.** With respect to the *Caldwell* claim we added that:

Alternatively, even if we were to conclude that this issue is being raised in this petition for the first time, we must deny it as an abuse of the writ, Rule 9(b). In *Jones v. Estelle,* 722 F.2d 159 (5th Cir.1983) (en banc), we ruled that new claims in a successive petition must be dismissed if the failure to include them in a prior petition is an abuse of the writ. Claims must be included in the prior petition if a competent attorney should have been aware of the claims at the time of the prior petition. *Id.* at 169.

774 F.2d at 98.

per—that are said to indicate that a greater probability exists in Louisiana for the imposition of the death penalty where the victim of the crime is white. Second, Moore claims that he was denied effective assistance of counsel. We conclude that Moore has not made a substantial showing of the denial of a federal right, such as to entitle him to a certificate of probable cause to appeal, *see Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394–95, 77 L.Ed.2d 1090 (1983), and that he is not entitled to a stay of execution.

■ Turning first to Moore's claim that he was denied effective assistance of counsel, we find that the issue was squarely raised in Moore's first federal habeas petition, and thus, is a successive writ, disallowed under Rule 9(b), Rules Governing Section 2254 Cases.[5] The issue was determined adversely to Moore in the prior petition, the prior determination was on the merits, *Moore v. Maggio*, 740 F.2d 308, 313–19 (5th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985), and the ends of justice would not be served by reaching the merits of this application. *See Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963); 28 U.S.C. § 2244.

■ Turning next to Moore's *McCleskey* claim, we note that it too was raised in Moore's first federal habeas petition, and thus, is a successive writ, disallowed under Rule 9(b). The issue was previously determined adversely to Moore and the prior determination was on the merits. *Moore v. Maggio*, 740 F.2d at 321–22.[6]

We consider then, whether the "ends of justice" would be served by reconsideration of Moore's *McCleskey* claim. Moore's application appears to raise two grounds in support of the notion that the "ends of justice" would be served by consideration of Moore's present *McCleskey* claim: (1) his proffer of "new evidence" that was unavailable at the time the issue was first raised, and (2) the pendency of *McCleskey* and *Hitchcock* in the Supreme Court. We find that neither of these grounds justifies consideration, on the merits, of Moore's present *McCleskey* claim.

In support of his *McCleskey* claim, Moore now proffers statistical evidence that was not available in 1983, when he initially raised the *McCleskey* claim in his first federal habeas petition. The statistical studies that Moore proffers are the same studies that were offered by the petitioner in *Watson v. Blackburn*, 798 F.2d 872 (5th Cir.1986), a Louisiana death penalty case in which a black petitioner raised the issue of racial discrimination in the application of the death penalty. *See Petition for Writ of Habeas Corpus* at 9–10, *Watson v. Blackburn*, 798 F.2d 872 (5th Cir.1986). In *Watson*, this court found that those statistical studies did not entitle the petitioner to relief, or indeed, even to a hearing. *Watson*, 798 F.2d at 872. In concluding that the petitioner in *Watson*

---

5. Rule 9(b) provides:
    *Successive petitions.* A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

6. With respect to the claim of racial discrimination in the infliction of the death penalty, we stated:
    Moore's conclusory allegations do not entitle him to relief. *See, e.g., Spinkellink v. Wainwright,* [578 F.2d 582], 614 n. 40 [ (5th Cir. 1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979) ]. Moreover, in light of the evidence Moore proffered to the district

court, we do not believe that an evidentiary hearing is required on this issue. As in *Smith v. Balkcom,* 660 F.2d 573 (5th Cir.1981), *modified,* 671 F.2d 858 (5th Cir.), *cert. denied,* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982), the statistics proffered in the instant case are incomplete. The tables do not take into account the various statutory aggravating circumstances such as the "especially heinous, atrocious, or cruel" murder evidence in this case. *See also McCorquodale v. Balkcom,* 705 F.2d [1553] at 1556 [11th Cir.1983] (no evidentiary hearing required where "tables do not take into account the various aggravating circumstances such as the 'wantonly vile, horrible [and] inhumane' torture-murder evidence here").
    *Moore v. Maggio,* 740 F.2d at 322.

was not entitled to relief, we relied on *Wicker v. McCotter*, 798 F.2d 155 (5th Cir. 1986). In *Wicker*, a case involving a white petitioner whose victim was also white, we stated that:

> [E]ven assuming that Wicker has stated a valid claim, the statistical evidence upon which he relies remains inadequate under current Fifth Circuit and Eleventh Circuit law, to show that he has been the victim of discrimination. In *Prejean v. Maggio*, [765 F.2d 482, 486 (5th Cir. 1985)], we stated:
>
>> To create a fact issue warranting an evidentiary hearing, a statistical proffer must be "so strong that the results would permit no other inference but that they are the product of racially discriminatory intent or purpose." *Smith v. Balkcom*, 671 F.2d 858, 859, modifying 660 F.2d 573 (5th Cir.), *cert. denied*, 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). Prejean's tender does not meet this standard.
>
>> *Smith v. Balkcom*, Id. and *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir.1978), remain the touchstone of our analysis. In both *Smith* and *Spinkellink*, we said the proof must establish specific acts evidencing intentional or purposeful discrimination *"against the petitioner"* on the basis of race. *Id.* at 614 n. 40, quoted in *Smith*, 660 F.2d at 585 (emphasis supplied in *Smith*).

*Wicker*, 798 F.2d at 157 (footnotes omitted). Similarly, in *Evans v. McCotter*, 805 F.2d 1210, 1215 (5th Cir.1986), in considering the evidentiary proffer made by the black petitioner, we stated that:

> [P]etitioner's second federal habeas petition contains two pages of raw correlations allegedly evincing discriminatory application of the death penalty. The statistical evidence upon which Evans relies remains inadequate under current Fifth Circuit law to show that he has been the victim of discrimination or to entitle him to an evidentiary hearing. *See, e.g., Wicker v. McCotter*, 798 F.2d 155, 157 (5th Cir.1986), and cases cited therein.

*Id.* The fact that in *Evans*, the petitioner offered only raw correlations while in the instant case Moore offers statistical studies is not significant because the studies proffered here were expressly found in *Watson* to be an inadequate statistical proffer, not justifying relief or a hearing.

■ Thus, even assuming, without deciding, that the proffer of new statistical studies could qualify for the "ends of justice" exception to the successive petition rule, *see, e.g., Adams v. Wainwright*, 734 F.2d 511, 512–13 (11th Cir.) (granting stay of execution pending en banc resolution of another 11th Circuit case despite the fact that writ was successive, where petitioner was denied evidentiary hearing and appointment of experts in state court and in federal court on his first federal habeas petition, and where statistical evidence he relied on became available only after prior federal habeas proceeding), *vacated*, 466 U.S. 964, 104 S.Ct. 2183, 80 L.Ed.2d 809 (1984), these studies are, under Fifth Circuit precedent, an inadequate statistical proffer.

■ The claim that the pendency of *McCleskey* and *Hitchcock* before the Supreme Court justifies the reconsideration of Moore's successive petition is squarely foreclosed by our decision in *Evans* wherein we stated:

> Assuming, without deciding, that an intervening change in the law would qualify under the "ends of justice" exception to the successive petitions rule, Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts, *but see Kuhlmann v. Wilson*, [— U.S. ——] 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (plurality), we hold that the grant of certiorari in *McCleskey* does not so qualify.

At 1215.

Therefore, under the authority of *Evans* and *Watson*, we conclude that Moore's *McCleskey* claim is a successive writ and that there are no grounds that support its reconsideration.

III.

For the foregoing reasons, it is OR-DERED that the application for a certificate of probable cause and the motion for a stay of execution are DENIED. The mandate shall issue forthwith.